966 So.2d 1069 (2007)
Rose GUDO, Individually and on behalf of all others similarly situated, and Tony Gudo, Individually and on Behalf of all others similarly situated
v.
The ADMINISTRATORS OF the TULANE EDUCATIONAL FUND d/b/a The Tulane University of Louisiana and d/b/a Tulane University Hospital and d/b/a Tulane University School of Medicine, Mary Bitner Anderson, et al.
No. 2006-CA-1515.
Court of Appeal of Louisiana, Fourth Circuit.
September 5, 2007.
*1072 Stephen B. Murray, Sr., Stephen B. Murray, Jr., James R. Dugan II, Douglas R. Plymale, Murray Law Firm, and David L. Browne, The Law Offices of David L. Browne, L.L.C., and Kenneth M. Carter, Kenneth M. Carter, APLC, and Lewis Kahn, Kevin Oufnac, Kahn Gauthier Swick, L.L.C., New Orleans, Louisiana, and James M. Williams, John W. Houghtaling II, Gauthier, Houghtaling & Williams, L.L.C., Metairie, LA, for Plaintiffs/Appellees.
Phillip A. Wittmann, Stephen G. Bullock, John P. Farnsworth, Jason M. Bilbe, Kathryn M. Knight, Stone Pigman Walther Wittmann, L.L.C., New Orleans, Louisiana, for Defendants/Appellants, The Administrators of the Tulane Educational Fund and Mary Bitner Anderson.
Gregory J. McDonald, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, Louisiana, for Defendant/Appellant, National Anatomical Service, Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge LEON A. CANNIZZARO, JR.).
JAMES F. McKAY III, Judge.
The issue in this case is whether the trial court properly granted the appellees' motion to certify the matter as a class action. We find that the trial court was correct and affirm the judgment.
The trial court conducted a class certification hearing on June 19, 2006, and took the matter under advisement. On August 22, 2006, the trial court issued its Judgment and Reasons for Judgment, granting the plaintiffs' motion and adopting plaintiffs' proposed class certification arguments.
The appellants, the administrators of the Tulane Educational Fund d/b/a the Tulane University of Louisiana and d/b/a Tulane University Hospital and d/b/a Tulane University School of Medicine ("Tulane"), Mary Bitner Anderson, individually and in her capacity as Director of the Tulane Willed Body Program, and National Anatomical Services, Inc. ("NAS"), appeal the judgment of the trial court granting the plaintiffs', Rose Goudeau[1] and Tony Goudeau, individually and on behalf of all other similarly situated, motion for class certification.
The case at bar primarily involves allegations that Tulane sold donated cadavers, both decedent donated by testament and post death family donated, to other facilities without proper notification to the families of the decedents; primarily cadavers that were sold to the NAS and ultimately to the U.S. Army. The concern appears to be related to the type of testing allegedly used on the cadavers and final disposition of the remains. Pursuant to contracts for donation, the donated cadavers were to be cremated and the ashes were either to be returned to the families (if so requested) or interred in a cemetery plot that the Louisiana Bureau of Anatomical Services maintained.
The appellees asserted various allegations in their original class action petition for damages pursuant to La. C. Civ. Pro. art. 591, et seq. The willed body program was established for the purpose of medical research and training. Tulane accepted such donations and arranged for the cadavers to be delivered to Tulane University School of Medicine. Tulane actively solicited and collected more bodies than its medical school training programs could use *1073 and in turn, as early as 1998, sold the bodies that it did not use to NAS, a body broker based in New York, who in turn sold the cadavers on the open market, specifically to the U.S. Army. The appellees assert that they were never notified that the cadavers would be sold and used for purposes other than medical training or medical research at Tulane. They argue that Tulane's conduct violated Louisiana laws of unjust enrichment and negligent misrepresentation, and constituted fraud, breach of contract and unauthorized mutilation of dead bodies.[2] In short, Tulane failed to meet the obligation to ensure that the donated cadavers were being used in accordance with the terms of the donations. The appellees further argue that Tulane's unauthorized conduct violates La. C.C. art. 2315, and constitutes unauthorized mutilation, desecration, and mishandling of dead bodies and gave rise to their negligence claims for emotional distress damages.
The appellants contend that the trial court erred in certifying this class action by finding that the plaintiffs met their burden of proof on each of the requisite elements of numerosity, commonality, typicality, and adequate representation necessary for class certification. They argue that the trial court erred in certifying the class action, given evidence suggesting that the plaintiffs failed to identify a single common issue that could be tried on a class-wide basis.
LAW
The central issue for this Court to address is whether the trial court erred in granting the motion for class certification. The standard of review of class certification decisions is a bifurcated one. Watters v. Department of Social Services, XXXX-XXXX, p. 3 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 272. A trial court's decision concerning class certification is reviewed under both a manifest error and an abuse of discretion standard. Parry v. Administrators of Tulane Educational Fund, 98-2125, p. 3 (La.App. 4 Cir. 6/30/99), 740 So.2d 210, 212; Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476. The factual findings are reviewed under the manifest error/clearly wrong standard; the trial court's discretionary judgment on whether to certify the class or not is reviewed by the abuse of discretion standard. Id. (citing Boudreaux v. State, Dep't of Transp. and Dev., 96-0137, p. 5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 119). These two standards of review correspond with the two-step process for determining whether to certify a class action. First, a trial court must find a factual basis exists to certify an action as a class action. Second, the court must exercise its discretion in deciding if certification is appropriate. Singleton v. Northfield Ins. Co., XXXX-XXXX, p. 7 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 61.
In Galijour v. Bank One Equity Investors-BIDCO, Inc., XXXX-XXXX (La. App. 4 Cir. 6/21/06), 935 So.2d 716, 723, this Court noted that in order to maintain a class action, three basic elements are essential: (1) a class so numerous as to make it impracticable for all of them to join or to be joined as parties; (2) one or more adequate representatives of the class who are before the court either as plaintiffs or defendants; and (3) a "right sought to be enforced for or against the members of the class [which is] [c]ommon to all members of the class." 1 Frank Maraist & Harry T. Lemmon Louisiana Civil Law Treatise; Civil Procedure § 4.12 (1999) ("Maraist & Lemmon"). These elements *1074 are codified in La. C.C.P. art. 591, which has been noted to require proof of five threshold requirements: numerosity, commonality, typicality, adequacy of representation, and identifiability. Howard v. Willis-Knighton Medical Center, 40,634, p. 26 (La.App. 2 Cir. 3/8/06), 924 So.2d 1245, 1260. The burden is on the plaintiff, as the party seeking to utilize the class action procedure, to establish each element by a preponderance of the evidence. Royal Street Grocery, Inc. v. Entergy New Orleans, Inc., 99-3089, 99-3090, p. 6 (La. App. 4 Cir. 1/10/01), 778 So.2d 679, 684. All of these elements must be established in order for a class action to be appropriate. Billieson v. City of New Orleans, 98-1232, p. 10 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 154. The failure to establish any element precludes certification.
In the case sub judice the trial court made a factual finding noted in its reasons for judgment as follows:
The Court finds that their claims are based on the same acts, omissions and legal theories that have given rise to the damages sought by the entire proposed class. The arguments of counsel and the record reveal that each of the proposed class representatives are near relatives of those who participated in the Willed Body Program. Moreover, there is no opposition to the adequacy of counsels representing the proposed class representatives. Thus, the Court finds that the claims are typical of all class members, and the proposed class representatives are in accordance with Article 591(A)(3)(4).
A class action is simply a procedural device; it confers no substantive rights. When deciding a motion to certify, a court is limited to considering whether the procedural device is appropriate. Id. at 153; Cooper v. City of New Orleans, XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/14/01), 780 So.2d 1158, 1160. The purpose of a class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representative who brings the suit, but also all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise their right to opt out of the class. Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 7 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, 1141.
MANDATORY REQUIREMENTS FOR CLASS CERTIFICATION
Louisiana Code of Civil Procedure Articles 591-597 govern the class action procedure. La.C.C.P. art. 591(A) provides the general rule for certification of a class. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
(4) The representative parties will fairly and adequately protect the interests of the class; and
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
In addition, La. C.C.P. art. 591(B) provides in pertinent part:
An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members *1075 of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
Further, it is well-settled that a "trial court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at the certification hearing." Billieson v. City of New Orleans, 729 So.2d at 154.
NUMEROSITY
Numerosity is the first prerequisite for certifying a class. To satisfy the numerosity requirement, the party seeking certification must establish that the members of the class are so numerous that joinder is impracticable. The key is "impracticality, and not impossibility of joinder." Maraist & Lemmon, supra. This requirement reflects the basic function of the class action device of allowing a small number of persons to enforce claims for the benefit of many when it would be inequitable and impracticable to join every person sharing such claims at issue in the suit. Davis v. Jazz Casino Co., L.L.C., XXXX-XXXX, p. 6 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 887 (citing Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085 *1076 (1998)("Lambert")). Although identification of all potential class members is not necessary, the party seeking certification must establish a definable group of aggrieved claimants. Farlough v. Smallwood, 98-8106 (La.App. 4th Cir.4/12/88), 524 So.2d 201, 203. Conclusory allegations do not carry the plaintiff's burden to establish numerosity. Lewis v. Roemer, 94-0317 (La.App. 4 Cir. 9/29/94), 643 So.2d 819, 822. In Hampton v. Illinois Central Railroad Company, 98-0430 at p. 8 (La.App. 1st Cir.4/1/99), 730 So.2d at 1091 at 1094-95, the First Circuit required that the plaintiffs seeking certification meet a threshold burden of "plausibility" as a component element of a prima facie showing of numerosity. In doing so, it emphasized that numerosity is not shown by mere allegations of a large number of potential claimants, or, in the case of a mass tort, by showing a certain population within a certain geographic radius or proximity of the event. Id. In the case of a mass tort, this burden of plausibility requires some evidence of a causal link between the incident and the injuries or damages claimed by sufficiently numerous class members. This prima facie showing need not rise to the status of proof by a preponderance of the evidence, as would be necessary to prevail on the merits. Hampton, Id. at 1096.
In the record at least sixteen class members are currently identified with a projection of many more potential plaintiffs to be added. All of the named plaintiffs had some familial relationship to the donors and assert emotional damages. The plausibility of their claims is not necessary at this juncture in this litigation as class action certification is merely a procedural mechanism and confers no substantive rights on the parties. In the reasons for judgment, the trial court notes that:
. . . [p]laintiffs estimate that there are more than 1,000 members of the proposed class. Plaintiffs start the basis of their estimate on a ten year span from 1994 to 2004, when the lawsuit was filed. Defendant estimate [sic] that Tulane has received more than 100 excess willed bodies each year. Tulane's Willed Body Program has had a relationship with National Anatomical Service, Inc for at least the past six years, since 1996. The Court finds that the plaintiffs have satisfied the numerosity requirement.
The original petition and supplemental petitions set forth the names of sixteen class representatives. The record thus supports the factual finding that there is a significant number of the class members known and a potential for a significant number of plaintiffs yet to be determined. These factors supports a finding that joinder is practical and that the numerosity requirement is met. When incorporated into judicial economy considerations in avoiding a multiplicity of lawsuits we agree with the trial court's determination that the numerosity element of the certification process is satisfied.
COMMONALITY
The next requisite for class certification is the requirement of commonality. In affirming the certification of the class in West v. G & H Seed Co., XXXX-XXXX (La. App. 3 Cir. 8/28/02), 832 So.2d 274, at 287, the Third Circuit stated:
Representative class members may sue if "[t]here are questions of law or fact common to the class." La.Code Civ.P. art. 591(A)(2). The common questions must predominate over questions affecting individual members. La. Code Civ.P. art. 591(B)(3). "The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. A common *1077 question is defined as one which when answered as to one class member is answered as to all of them." Duhe, 779 So.2d at 1078 (citations omitted). Moreover, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc., 99-494, p. 3 (La.11/12/99); 759 So.2d 755, 756.
The trial court in it reasons for judgment sites to Billieson v. City of New Orleans, 98-1232 (La.App. 4 Cir. 3/3/99), 729 So.2d 146.
Commonality requires that questions of law and fact common to the class as a whole predominate over those questions germane only to the claims of individual class members. Billieson v. City of New Orleans, 729 So.2d 146 (La.App. 4 Cir.1999). The commonality requirements involves a two-step inquiry: (1) a determination that common issues predominate over questions affecting only individual members, and (2) a determination that the class action procedure is superior to other procedural mechanisms. Id.

In determining whether the class action procedure is superior to other procedural mechanisms available to the proposed class, jurisprudence directs the Court to consider whether the following three (3) "intertwined goals" would be best served by the use of a class action: (1) effectuating substantive law, (2) judicial efficiency, and (3) individual fairness. Id.

To evaluate whether a class action in the instant matter would effectuate substantive law, the Court must first determine the policy behind the adjudication of the underlying cause of action. The plaintiffs assert unjust enrichment, breach of contract and negligence against the defendants. (footnote omitted) The plaintiffs have also alleged fraud and misrepresentation against the Administrators of the Tulane Educational Fund d/b/a Tulane University, The Willed Body Program and Dr. Anderson with respect to Tulane's misrepresentations and concealment of the alleged truth behind the Willed Body Program. The Court, however, finds through a thorough review of the record and arguments of counsel that the underlying cause of action relates to plaintiffs cause of action for unauthorized desecration/mutilation of their deceased loved ones' bodies.
Louisiana courts have held that Article 2315 of the Louisiana Civil Code is broad enough to encompass an action for the unauthorized desecration/mutilation of a dead body. Green v. Southern Transplant Services, Inc., 97-1133,(La.App. 4. Cir.8/31/97), 698 So.2d 699, 701; See Blanchard v. Brawley, 75 So.2d 891 (La.App. 1 Cir.1954). In order to maintain an action for the tort of unauthorized mutilation of a dead human body, the plaintiff [sic] must [sic] near relatives of the decedent; the mutilation to the human corpse must be negligent or wanton; the mutilation must be unauthorized; and the plaintiff must have suffered emotional distress as a direct result of being aware of the unauthorized mutilation. Id.

In the instant case, the plaintiffs, and proposed class representatives, are the near relatives of those persons who have donated their bodies to the Willed Body program. The plaintiffs have alleged that the desecration/mutilation of the bodies donated to the Willed Body Program were unauthorized and negligent. As a result, the plaintiffs have suffered *1078 damages as a result of the unauthorized desecration of their loved-ones' bodies. Moreover, the Court finds that it would be judicially inefficient or unfair to allow these claims to be litigated separately because they involve the same questions of law and fact. Accordingly, the Court finds the plaintiffs have satisfied the commonality requirement of Articles 591(A)(2).
We find that there is a plausible basis for the plaintiffs' allegations sufficient to support a prima facie case against the defendants.
After reviewing the trial court's reasons above, we agree with its determination that the plaintiffs have satisfied the commonality prerequisite for class certification.
ADEQUACY OF REPRESENTATION AND TYPICALITY
The next prerequisites for maintaining a class action is proof of adequate representation for the absent class members and typicality.
Adequacy is a principal requirement for certification where the class representatives must be adequate for the class. The representatives' claims must be a cross section of, or typical of, the claims of the other class members. Adams v. CSX R.R.s, 615 So.2d 476, 481 (La.App. 4 Cir.1993). In the case sub judice, the class of damages asserted by each representative is typical of the other class members, although a claim by a particular class representative regarding the exact damage may not be typical. The class representatives will adequately represent the absent class members. The class representatives have suffered injuries that are typical of the class. Accordingly, we do not find that the trial court erred in finding that the class representatives satisfied the requisite elements of typicality and adequacy.
Typicality, in class action certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory. Andrews v. Trans Union Corp., 04-2158, p. 8 (La.App. 4 Cir. 8/17/05), 917 So.2d 463, 469. The element of typicality requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 5 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. Louisiana jurisprudence does not require a "Noah-like" tabulation of class representatives and claims. Johnson v. Orleans Parish School Bd., 00-0825, 00-0826, 00-0827, 00-0828, p. 10 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 742. The plaintiffs are not required to produce two, or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class. Johnson, 00-0825, p. 10, 790 So.2d at 742; Andry, 97-0793 at p. 6, 710 So.2d at 1131.
The representative plaintiffs' claims arise out of the "Willed Body Program", with respect to Tulane's misrepresentations and concealment of the alleged truth concerning the use and disposition of the donated bodies of the class members loved ones. The putative class members' claims are also all based on the same theory of law. As such, the representative plaintiff in the instant case typically and adequately represents a cross-section of the claims asserted on behalf of the class; all plaintiffs in this purported class bring identical claims, relying on identical legal and remedial theories, based on Tulane's actions.
*1079 In the case sub judice the class representatives were confronted with the same potential injury as other class members, flowing from the same type of contract for donation of cadavers, the same scenario, questions of law and theories of recovery, thereby, satisfying the representation requirement.
The class was clearly and objectively defined as "all members similarly situated." The trial court in its reasons for judgment found that:
. . . their [plaintiffs] claims are based on the same acts, omissions and legal theories that have given rise to the damages sought by the entire proposed class. The argument of counsel and the record reveal that each of the proposed class representatives are near relatives of those who participated in the Willed Body Program. Moreover, there is no opposition to the adequacy of counsels representing the proposed class representatives. Thus, the Court finds that the claims are typical of all class members, and the proposed class representatives are in accordance with Article 591(A)(3)(4).
The trial court in its reasons for judgment has compiled a list of class representatives.[3] The appellants assert that the named plaintiffs have failed to propose a "definable group of aggrieved persons" or a class "defined objectively in terms of ascertainable criteria" as is required to satisfy La. C.C.P. art. 591(A)(5). This assertion lacks sufficient substance to overrule the judgment of the trial court.
We find that the trial court in its reasons for judgment adequately evaluates the issues concerning the adequate representation and typicality to sustain the class certification prerequisites.
The final threshold to sustain class certification is definability or identifiability of the class. The burden is placed on the party seeking class certification to demonstrate that all of the requisite elements for certification exist. Accordingly, the plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Davis v. Jazz Casino Co., 864 So.2d at 886. The trial court in its reasons for judgment defined the class as "the plaintiffs, and the proposed class representatives, are the near relatives of those persons who have donated their bodies to the Willed Body Program" and found that "the class definition is appropriate because the members of the proposed class have standing to assert claims based upon their relationship with the decedent." We find that the trial court was correct in adopting the plaintiffs' definition of the class thus fulfilling the final pre-requisite to class certification.
Accordingly, this Court finds that the trial court amply discussed the various prerequisites for the maintaining of a class action pursuant to La. C.C.P. art. 591(A), and how each of the criteria has been met in its reasons for judgment.
This Court also recognizes that the trial court has wide latitude in considerations that required an analysis of the facts relative to the prerequisites for class certification in a given case, and its decision on certification must be affirmed unless it is manifestly erroneous. Parry v. Administrators of Tulane Educational Fund, 740 So.2d at 212. Based on the *1080 bifurcated standard of review for class action certification enumerated in Watters v. Department of Social Services, 929 So.2d 267, we do not find that the trial court erred in granting plaintiffs' motions for certification of class actions. In light of the evidence submitted, we do not find that the trial court's findings of facts were manifestly erroneous, nor do we find that the trial court abused its discretion to certify the plaintiffs' claims as class actions. Accordingly we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Although the appellees are referred to in the caption as Rose and Tony Gudo, the actual spelling of their surname is Goudeau and will be referred to as such in this opinion.
[2] Plaintiffs' claim of unjust enrichment against all defendants was dismissed by the trial court on May 19, 2006 on defendants' motion for summary judgment.
[3] Rose Goudeau, Tony Goudeau; Dawn Dazet, individually and for her minor child, Nicole Elizabeth Dazet; Elaine Wagener; Leola M. Ajan; Leona E. Falgout; Patricia Hurst; John S. Burk, Sr.; John S. Burk, Jr.; Judy A. Lynn; Susan Cook; Pamela M. Beach; Richard B. Beach, II; and Shari Beach.