16 So.3d 1220 (2009)
Darlene HUSBAND, Carrol Dabney, Shalanda A. Bell, Sharleen McGlothurn, Dolores Thompson Andrea Buffert, Annie Paul and Antoinette Richards, Individually and on behalf of all others similarly situated
v.
TENET HEALTHSYSTEMS MEMORIAL MEDICAL CENTER, INC., d/b/a Memorial Medical Center.
Elmira Preston, Howard Preston, Rose Lefrance Preston, Sheryl Preston, Deborah Mazie, Anthony Preston, Leonard Preston, Darlene Preston, Cynthia Preston, Angela Nelson, Wanda Preston, Byran Preston and Tyrone Preston, et al.
v.
Tenet Healthsystems Memorial Medical Center, Inc. d/b/a Memorial Medical Center.
Nos. 2008-CA-1527, 2009-CA-0002.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 2009.
*1224 Tammie Holley, Stephen P. Bruno, David S. Scalia, Bruno & Bruno, LLP, Mark P. Glago, Glago Law Firm, L.L.C., Roderick "Rico" Alvendia, Alvendia, Kelly & Demarest, L.L.C., Anthony D. Irpino, Irpino Law Firm, L.L.C., New Orleans, LA, Todd R. Slack, Gauthier Houghtaling & Williams, Metairie, LA, for Plaintiffs/Appellees.
Kurt S. Blankenship, Robert I. Baudouin, Richard E. Gruner, Jr., Blue Williams, L.L.P., Metairie, LA, Harry T. Lemmon, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
In this consolidated action, Defendants, Tenet Healthcare Systems and Tenet HealthSystems Memorial Medical Center, Inc. D/B/A Memorial Medical Center, appeal from the judgment of the trial court certifying the matter as a class action. For the reasons fully set forth below, we find that the elements necessary for class certification are present and affirm the judgment of the trial court certifying the class.

Relevant Facts
For the purposes of class certification in this case, the following facts are relevant and undisputed. On Sunday, August 28, 2005, the population of Memorial Medical Center ("Memorial") consisted of approximately 2000 people, including: 182 adult patients, 16 Neonatal Intensive Care Unit ("NICU") babies, 600 Memorial employees, 850 family members of patients and employees, 20 physicians, approximately 10 New Orleans Police Officers, approximately 15 Louisiana National Guardsmen, and other evacuees.
In the early morning of Monday, August 29, 2005, Hurricane Katrina struck the New Orleans area. During the storm, Memorial lost electrical power and was subsequently powered by its back-up generators. After the storm subsided, some people were evacuated. In the early morning of Tuesday, August 30, 2005, the New Orleans levee system was breached. Upon learning of the breach, the CEO of Memorial ordered an evacuation of the facility. By mid-evening, all 16 NICU babies, a small number of other NICU staff, 1 physician, 18 adult Intensive Care Unit ("ICU") patients, all babies from the nursery, 6 women with high-risk pregnancies, and 10 to 12 dialysis and medical/surgical patients were evacuated. In the early morning of Wednesday, August 31, 2005, Memorial lost all power. Evacuations continued *1225 throughout the day. Approximately 110 patients and numerous family members were evacuated. During the day of Thursday, September 1, 2005, the majority of the remaining patients, family members, staff, visitors, and physicians were evacuated. In the early hours of Friday, September 2, 2005, the remaining Memorial staff and family members (approximately 40 to 50 people) were evacuated.
Two similar, but separate, class action petitions were filed against Memorial arising out of events at Memorial during and shortly after Hurricane Katrina. The first, entitled Leon Preston, et al., v. Tenet HealthSystem Memorial Medical Center, et al. was filed on October 6, 2005, in the Civil District Court for the Parish of Orleans. The second such action, entitled Darlene Husband, et al v. Tenet Health-System Memorial Medical Center, et al., was filed on August 2, 2006, in the Civil District Court for the Parish of Orleans.
The Preston and Husband plaintiffs consist of patients, family members, visitors, staff and employees of Defendants, who were present at Memorial Medical Center during and after August 29, 2005  the date that Hurricane Katrina struck New Orleans, Louisiana. In their Petitions, Plaintiffs complain of damages including wrongful death, emotional distress, and property damage allegedly caused by Defendants' failure to have an emergency protocol in place before, during, and after the hurricane, failure to evacuate, failure to provide emergency backup power, design and/or construction defects, failure to warn, and premises liability.
By joint motion of the plaintiffs and defendants involved, the class certification discovery and class certification hearings in both cases were consolidated before the trial court on June 26, 2008. In a ruling dated September 17, 2008, the trial court granted the motions for class certification and ordered that the plaintiffs' claims against Defendants proceed as a class action. This consolidated appeal followed.

Class Certification Order
The Class Certification Order sets out the following definition of the class:
All patients of Memorial Medical Center, and visitors on the premises, who sustained injuries including death or personal injury as a result of the insufficient design, inspection and/or maintenance of Memorial's backup electrical system, failure of Memorial and/or Tenet HealthSystem (THC) to implement their evacuation plans and/or emergency preparedness plans, and/or the failure of Memorial and/or THC to have a plan which would have facilitated the safe transfer of patients and visitors out of harm's way, and the failure of Memorial and/or THC to have a plan of care for patients and visitors in the event of a power outage in the wake of Hurricane Katrina within the property owned by Memorial on or about the time period of August 26th through and including August 29th and thereafter; and
All persons who sustained personal injury as a result of the deaths or personal injuries to patients of Memorial and visitors on the premises as a result of the insufficient design, inspection and/or maintenance of Memorials backup electrical system, the failure of Memorial and/or THC to implement their evacuation plans and/or emergency preparedness plans, and/or the failure of Memorial to have plan which would have facilitated the safe transfer of patients and visitors out of harm's way, and the failure of Memorial and/or THC to have a plan of care for patients and visitors in the vent of a power outage in the wake of Hurricane Katrina within the property owned by Memorial on or about the time period of August 26th through and *1226 including August 29th, 2005 and thereafter.
All persons at or in the Memorial Medical Center facility who were not Memorial employees, who sustained injury and/or damage, including but not limited to, personal injury or wrongful death, as a result of: unreasonably dangerous conditions and/or defects in and/or on the premises of Memorial Medical Center, insufficient design, inspection and/or maintenance of Memorial's backup electrical system, the failure of Memorial and/or Tenet HealthSystem (THC) to implement their evacuation plans and/or emergency preparedness plans, and/or the failure of Memorial and/or THC to have a plan of care for patients, visitors and invitees in the event of a prolonged power outage in the wake of Hurricane Katrina within the property owned by Memorial on or about the time period of August 26, 2005 through and including August 29, 2005 and thereafter; and
All persons who sustained injury as a result of the death or personal injury to any person at or in the Memorial Medical Center facility (who was not a Memorial employee who sustained injury and/or damage, including but not limited to personal injury or wrongful death, as a result of: unreasonably dangerous conditions and/or defects in and/or on the premises of Memorial Medical Center, insufficient design, inspection and/or maintenance of Memorials' backup electrical system, the failure of Memorial and/or THC to implement their evacuation plans and/or emergency preparedness plans, and/or the failure of Memorial and/or THC to have a plan which would have facilitated the safe transfer of patients, visitors and invitees out of harms' way, and the failure of Memorial and/or THC to have a plan of care for patients, visitors and invitees in the vent of a prolonged power outage in the wake of Hurricane Katrina within the property owned by Memorial on or about the time period of August 26, 2005 through and including August 29th, 205 and thereafter.

Law and Discussion

Class Actions Generally
The issue in this case is whether the trial court properly granted the Plaintiffs' motions to certify the matter as a class action. A class action is a nontraditional litigation procedure permitting representatives with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when a question of law or fact is of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544.
In general, the fundamental objective of the class action procedural device is the achievement of economies of time, effort, and expense. Lewis v. Texaco Exploration and Production Co., Inc., 96-1458, p. 19 (La.App. 4 Cir. 7/30/97), 698 So.2d 1001, 1014. With respect to the parties, the purpose and intent of the class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but also to all others who are similarly situated. Banks v. New York Life Ins. Co., 98-0551, p. 5 (La.12/7/98), 722 So.2d 990, 993 (citing Ford, supra, 703 So.2d 542). A class action is a procedural device only and does not confer substantive rights. Andry v. Murphy Oil, U.S.A., Inc., XX-XXXX-XX-XXX, p. 2 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1128-29. Moreover, a class certification hearing does not determine liability and is not the correct *1227 venue to decide the merits of the case or the defenses the defense may allege. Chalona v. Louisiana Citizens Property Ins. Corp., 08-0257, p. 10-11 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 503. However, the determination of whether a class action meets the requirements imposed by law involves a rigorous analysis. Brooks v. Union Pacific Railroad Company, 08-2035, p. 6 (La.5/22/09), 13 So.3d 546. The trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings. Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 152 (La.1975).

Standard of Review
The customary standard of review for a trial court's ruling on a motion for class certification is tri-parte. Factual findings are subject to the manifest error standard, but the trial court's ultimate decision of whether or not to certify the class is reviewed by the abuse of discretion standard. Brooks, 08-2035, p. 6, 13 So.3d at 551. The question of whether the district court applied the correct legal standards in determining whether to certify the class is reviewed de novo. Id.
Defendants contend that, because the trial court made no findings to which the manifest error/clearly wrong standard would apply, this Court should undertake a de novo review of the proceedings below. In support of this argument, Defendants cite Ambrose v. New Orleans Police Dep't. Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, for the proposition that "[b]ecause the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support." Id. at 221.
The trial court entered a judgment and reasons for judgment articulating the facts upon which the decision to certify was based. Defendants would have us make innovation in an area of the law that neither needs nor merits such innovation. We decline to do so and hold instead that the traditional tripartite standard of review is the correct standard of review to be applied to this case.[1]

Class Certification Procedure: La. Code Civ. Proc. art. 591
In the State of Louisiana, the procedure for class certification is governed by Article 591 of the Louisiana Code of Civil Procedure. Article 591 is divided into two subsections: 591(A) and 591(B). Article 591(A) provides that a civil action must first meet five prerequisites to qualify for class certification. Those prerequisites are as follows:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law and fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interest of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case.
*1228 La.Code Civ. Proc. art. 591. These five prerequisites are commonly referred to as numerosity, commonality, typicality, adequacy, and identifiability.
In addition to these five prerequisites, Subsection 591(B) lists three additional criteria, only one of which need be satisfied to certify a class. Under 591(B), a trial court must find that:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or would substantially impair/impede their ability to protect those interests, or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions,
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
(c) The desirability or undesirability of concentrating the litigation in the particular forum,
(d) The difficulties likely to be encountered in the management of a class action,
(e) The practical ability of individual class members to pursue their claims without class certification,
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation [.]
La.Code Civ. Proc. art. 591.
With these principles in mind, we now turn to an examination of the pleadings and evidence submitted with the motions to certify the classes, in light of the relevant law, to determine whether the motions were properly granted.

La.Code Civ. Proc. art. 591(A)

Numerosity
The first prerequisite to class certification is that the class must be so numerous that joinder of all members is impracticable. La.Code Civ. Proc art. 591(A)(1). The determination of numerosity is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims. Chalona, 08-0257, p. 6, 3 So.3d at 500-01. The numerosity requirement for class certification is not established by mere allegations of a large number of potential claimants. Johnson v. Orleans Parish School Bd., XX-XXXX-XX-XXXX, p. 7 (La.App. 4 Cir. 6/27/01), 790 *1229 So.2d 734, 741. Rather, the burden is on the plaintiff/movant to make a prima facie showing that a definable group of aggrieved persons exists and that the class is so numerous that joinder is impractical. Id. at 7-8, 790 So.2d at 740-41. However, the key is impracticality, and not impossibility of joinder. Gudo v. Admin. of Tulane Educ. Fund, 06-1515, p. 7 (La.App. 4 Cir. 9/5/07), 966 So.2d 1069, 1075. No set number has been established that automatically makes joinder impractical, rather, the determination is based on the facts and circumstances of each case. Chiarella v. Sprint Spectrum LP, 04-1433, p. 18 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 119. This Court has held, however, that a presumption arises that joinder is impractical, for purposes of class certification, if more than 40 class members exist. Vela v. Plaquemines Parish Government, 658 So.2d 46, 48 (La.App. 4 Cir. 6/29/95). We have also held that the certification of a class containing between 150 and 600 members would not be manifestly erroneous on grounds that the class was not so numerous that joinder was impractical. Id.
Here, the trial court found that the class, as defined, might include as many as two thousand plaintiffs who were on the premises of Memorial Medical Center during the time period defined in the class certification order and that joinder of so many separate plaintiffs would be impractical. Because there is evidence to support such a finding, we cannot say that this finding was manifestly erroneous.

Commonality
The second prerequisite to class certification is that there are questions of law or fact common to the class. La.Code Civ. Proc. art. 591(A)(2). The test of commonality is not a demanding one. Rapp v. Iberia Parish School Bd., 05-833, p. 9 (La.App. 3 Cir. 3/1/06), 926 So.2d 30, 37. It requires only that there be at least one issue of law or fact, the resolution of which will affect all or a significant number of putative class members. Id. (citing Duhe v. Texaco, Inc., 99-2002, p. 12 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078).
Appellants argue that the commonality requirement is not met in this case since liability will be different for each individual class member. Plaintiffs, on the other hand, cite two issues, Defendants' alleged failure to maintain an adequate evacuation plan and Defendants' alleged negligence in the design, inspection and maintenance of the backup electrical system as examples of two issues that they argue are common to the class and whose resolution will affect all or a significant number of class members.
The trial court found that all of the Plaintiff-Appellees' claims are based on the same legal tort theories (i.e., negligence), arise from the same event (i.e., Hurricane Katrina and its aftermath) which occurred over the same period of time (i.e., August 26th, 2005 through August 29th, 2005). Acknowledging individual differences in the quantum of injury among Plaintiff-Appellees, the trial court also properly found that commonality was not defeated on that basis and that certification was not therefore improper. Plaintiffs have identified two examples of common issues whose resolution will affect all or a significant number of putative plaintiffs. Thus, because there is evidence to support such findings, we do not find the trial court's findings on this issue to be manifestly erroneous.

Typicality
The third prerequisite to class certification is that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. *1230 La.Code Civ. Proc. art. 591(A)(3). The requirement of typicality is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory. Gudo, 06-1515, p. 12, 966 So.2d at 1078. Moreover, plaintiffs seeking certification of a class action are not required to produce two, or even one, of every kind of claim or of every person included in the class, in order to satisfy the prerequisite of typicality for class certification. Davis v. Jazz Casino Co., L.L.C., 03-0005, p. 10 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 889.
The trial court found that all of the Plaintiff-Appellees' claims were based on the same legal tort theories (i.e., negligence), arise from the same event (i.e., Hurricane Katrina and its aftermath), over the same period of time (i.e., August 26th, 2005 through August 29th, 2005). The Court reasoned that, because these issues were common to all of Plaintiff-Appellees' claims, the claims of the representative plaintiffs were also typical of the class as a whole. Because there is evidence to support such a finding, we cannot say that these findings were manifestly erroneous.

Adequacy
The fourth prerequisite to class certification is that the representative parties must fairly and adequately protect the interests of the class. La.Code Civ. Proc art. 591(A)(4). Adequacy of representation for class certification requires that the claims of the proposed class representatives be a cross-section of, or typical of, the claims of all class members. Andry, 97-0793, p. 6, 710 So.2d at 1130. Class representatives can adequately represent absent class members, even though claims by a particular class representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is. Id. at 1131.
The trial court found that although the exact damages claimed by a putative class representative may not be typical, the class of damages is typical of that of the members of the class. Accordingly, the trial court held that the plaintiffs had satisfied the adequacy prerequisite. The affidavits of the class representatives submitted as evidence at the Class Certification hearing support Plaintiffs' assertions that the representatives will fairly and adequately provide protection for the interests of the class, that the basis of each claim is typical, and that each is willing to diligently prosecute this action on behalf of the class. Because there is evidence in the record to support the trial court's finding of adequacy, that finding is not manifestly erroneous.

Objective Definition of the Class
The final prerequisite under 591(A) is that the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. Chalona, 08-0257, p. 9, 3 So.3d at 502. The purpose of the class definition requirement for class certification is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he or she is a member of the class. Id. The class need not be so clearly defined that every class member can be identified at the commencement of the action, as the trial court can modify the class as needed when discovery or the trial adds relevant facts to the record. Duhe, 99-2002, p. 15, 779 So.2d at 1080.
*1231 The trial court found that the class was capable of definition by objectively discernable criteria. We agree. The proposed class is sufficiently defined in order to give potential class members enough information to determine whether they are included within the class and to enable potential class members whether to opt out of the class.
Based on the foregoing, we find the plaintiffs have fulfilled the statutory requirements of La.Code Civ. Proc. art. 591(A). We must now turn to the question of whether at least one of the requirements of article 591(B) has been met.

La.Code Civ. Proc. Art. 591(B)
The second level of analysis for determining whether to certify a class action is governed by La.Code Civ. Proc. art. 591(B). A court reaches this level of analysis only if it finds that all the requirements of article 591(A) have been met. Only one of the requirements of Section (B) must be met. In this case, the trial court found that the plaintiffs satisfied 591(B)(3), which requires the court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods of adjudicating the controversy.

La.Code Civ. Proc. Art. 591(B)(3)

Predominance
Defendants argue that the trial court erred in finding that Plaintiffs' claims are based on the same legal theories and that the evidence as to liability is identical to each claim. Defendants argue that Plaintiffs' claims span the spectrum from wrongful death to simple inconvenience and that, while Hurricane Katrina is one factor that needs to be evaluated, the causal mechanism for each separate plaintiff's injury varies according to individualized factors.
Subsequent to the trial court's judgment certifying this matter as a class action, the Louisiana Supreme Court had the occasion to address the relationship between questions of liability and the propriety of class certification in Brooks v. Union Pacific Railroad Company, 08-2035 (La.5/22/09), 13 So.3d 546. In Brooks, the Court held that "[a]n inquiry into predominance tests `whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Id., p. 913 So.3d at 553. The process prescribed by the Court in making this determination is to identify the substantive issues that will control the outcome, to assess which issues will predominate, and then to determine whether the issues are common to the class. Id. This process is ultimately meant to prevent the class from degenerating into a series of individual trials. Id.
The plaintiffs in Brooks were owners of property in Oakdale, Louisiana. Defendant Union Pacific Railroad constructed a set of elevated railroad tracks running north-south through the city. Under these tracks several drainage structures were built to prevent flooding during a typical rainstorm. On April 10-11, 1995, heavy rains in Oakdale resulted in large-scale flooding in the area where the plaintiffs owned property. Through a series of amended petitions, the plaintiffs filed suit against Union Pacific Railroad, the State of Louisiana through the Department of Transportation,[2] the City of Oakdale, the Allen Parish Police Jury and their insurers. In their petitions, the plaintiffs *1232 sought recovery mainly for property damages, with some personal injuries, alleging that the defendants' combined negligence in constructing and maintaining the drainage structures that ran under the tracks had caused the flooding of their properties.
After a three-day certification hearing which included the testimony of a number of experts, the trial court found that the requirements for class certification had been satisfied on the basis that the disallowance of individual trials was warranted by the subjective gain in efficiency. Accordingly, the trial court granted the plaintiff's motion for class certification. Later, however, on appeal, the Court of Appeal for the Third Circuit reversed and de-certified the class, finding that the commonality and predominance requirements were not met. The Supreme Court then granted the plaintiffs' writ application.
The Louisiana Supreme Court affirmed the decision of the Court of Appeals in de-certifying the class. The Court's analysis focused on the two requirements that had been the focus of the Court of Appeal: commonality and predominance. As to commonality, the Supreme Court found that the trial court's factual finding of common causation was manifestly erroneous because the testimony of expert witnesses had established that the predominate cause of flooding in the basins would vary depending on the basin in which an individual plaintiff lived. As to predominance, the Court found that the trial court had not conducted a sufficiently thorough analysis. Specifically, the Court stated that the predominance requirement entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.
In the case at bar, Defendants argue that the trial court erred in stating that the evidence as to liability is identical for each claim and that the case merely involves varying degrees of damages resulting from the same factual occurrence. Defendants further argue that the trial court's statement that Hurricane Katrina was a single event is a fallacy, and that pursuant to Brooks, since there is not a common cause of Plaintiffs' alleged injuries, this matter is not appropriate for adjudication by class action. We disagree.
We find that Brooks is distinguishable from the case at bar on its facts. In Brooks there were multiple defendants and multiple causes of the flooding that resulted in the plaintiffs' injuries. The plaintiffs alleged that combined actions of those defendants had caused flooding across three distinct geographical areas. Here, Plaintiff-Appellees assert that the failure of Defendant-Appellant Memorial  a subsidiary of Defendant-Appellant Tenet HealthSystem  to have in place a sufficient emergency plan, negligently caused the injuries to the class members, all of whom were on Memorial's premises during Hurricane Katrina and its aftermath. Thus, Plaintiff-Appellees allege that the negligent acts of one defendant created one set of circumstances which injured all of the class members.
Brooks held that in order to meet the common cause requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation. Here, the trial court found that the common issue was whether Defendants breached the standard of care owed plaintiffs and that this issue predominated over any individual liability issues in the case. Although not expressly stated, implicit in the trial court's findings of commonality *1233 and superiority is the predominance analysis in Brooks. All of Plaintiff-Appellees' claims are founded on an assertion of negligence on the part of Defendants in failing to have a protocol in place in the event of this type of catastrophe. Each class member will have to prove causation based on the same set of operative facts. And a determination of whether Defendants were negligent is therefore a substantive issue that will control the outcome. Because a determination of this issue will dispose of all of Plaintiff-Appellees' claims one way or another, it predominates over any individual issues which may be presented by the circumstances surrounding the claim of an individual class member. Finally, because all of Plaintiff-Appellees' claims are premised on an assertion of negligence on the part of Defendants, that predominant issue is common to the class. Because it is possible to reconcile the trial court's finding of predominance with the analysis prescribed in Brooks, we find no manifest error in the trial court's decision.

Superiority
When a common character of rights exists, a class action is superior to other available adjudicatory methods in effectuating substantive law, and promoting judicial efficiency and individual fairness. Chalona, 08-0257, p. 12, 3 So.3d at 503-04. If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals. Id.; Chiarella, 04-1433, p. 20, 921 So.2d at 120.
Here, each plaintiff's claim involves Defendants' alleged negligence in: 1) failure to have emergency protocol in place before, during, and after the hurricane; 2) failure to evacuate; 3) failure to provide emergency backup power; 4) defects in design and/or construction; 5) failure to warn; and 6) premises liability. Trying all the plaintiffs' claims separately could result in non-uniformity in the application of the law on these issues and in consideration of Defendants' anticipated defenses. Uniformity in this case can best be obtained by employing the class action procedure. Further, the class action procedure is a superior method under the circumstances to ensure individual fairness and to promote judicial efficiency.
The trial court exercised its discretion in determining whether class certification was superior to other available methods for the fair and efficient adjudication of the controversy. Considering the record before us, we find that the trial court did not err in finding that a class action is the superior procedural device for adjudicating this matter.

Conclusion
The trial court found that Plaintiff-Appellees satisfied all of the requirements of 591(A) as well as the requirements of 591(B)(3). A trial court has vast discretion regarding class certification. Billieson v. City of New Orleans, 98-1232, p. 8 (La. App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53. We find no manifest error in the trial court's findings and no abuse of discretion in the trial court's determination that this matter meets all of the requirements of La.Code Civ. Proc. art. 591 for certification as a class action. Moreover, the general rule is that if there is to be an error made, it should be in favor of, and not against, the maintenance of the class action, Dumas v. Angus Chemical Co., 25,632-CA, p. 12-13 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, 453. This is especially true in light of the fact that trial court always has the authority to revisit or modify its decision regarding class certification if later developments during the course of trial so require. Accordingly, we affirm the order of *1234 the trial court granting Plaintiff-Appellees' motion for class certification.
AFFIRMED.
NOTES
[1] This standard of review was recently reaffirmed by the Louisiana Supreme Court in Brooks.
[2] The Department of Transportation was dismissed as defendant in the Second Supplemental and Amended Petition.