952 So.2d 782 (2007)
Gerald ETTER
v.
HIBERNIA CORPORATION, J. Herbert Boydstun, E.R. "Bo" Champbell, Paul Candies, Richard W. Freeman, Jr., Dick H. Hearin, Randall E. Howard, Elton R. King, Sidney W. Lassen, Janee "Gee" Mercadel-tucker, et al.
No. 2006-CA-0646.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 2007.
*784 Lee D. Rudy, Schiffrin & Barroway, LLP, Radnor, PA, and Mitchell J. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., New Orleans, LA, for Gerald Etter.
Jennifer N. Willis, Cater & Willis, APLC, New Orleans, LA, and Gary J. Gambel, New Orleans, LA, for Appellants, Gary J. Gambel, Carol C. Gambel and William C. Gambel.
William C. Gambel, Milling Benson Woodward L.L.P., New Orleans, LA, for Appellants, William J. Curry, Jr., Joy Nalty Hodges, Charles L. Gambel, Jr., etc.
*785 William Savitt, Wachtell, Lipton, Rosen & Katz, New York, NY, and Harry A. Rosenberg, Phelps Dunbar L.L.P., New Orleans, LA, for Defendants/Appellees.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, Sr., and Judge LEON A. CANNIZZARO, Jr.).
DENNIS R. BAGNERIS, Sr., Judge.
The issue in this case is whether the trial court properly approved the certification and settlement of a class action brought by a class of purported holders of Hibernia Corporation ("Hibernia") common stock. Upon finding that the trial court did not abuse its discretion by approving the certification and settlement, we hereby affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
On March 6, 2005, Hibernia and Capital One Financial Corporation ("Capital One") entered into an Agreement and Plan of Merger whereby Capital One would acquire Hibernia's 155 million outstanding shares in exchange for consideration valued at approximately $33 per share as of the announcement of the merger.
On April 22, 2005, plaintiff, Gerald Etter, filed a petition on behalf of a putative class of Hibernia shareholders naming as defendants Hibernia and the individual members of Hibernia's Board of Directors. The petition alleged that Hibernia's directors had breached their fiduciary duties owed to Hibernia shareholders by: (1) agreeing to an inadequate merger price; (2) agreeing to an unreasonably high termination fee that would have required Hibernia to pay Capital One $220 million in the event the Hibernia board accepted a superior acquisition offer from a third party; and (3) placing their personal financial interests above those of the Hibernia shareholders. The petition sought predominantly injunctive relief. Thereafter, plaintiff's counsel engaged in intensive dialogue with counsel for defendants to negotiate a satisfactory resolution of the action.
On July 7, 2005, the parties filed a Stipulation and Agreement of Compromise, Settlement and Release (the "Settlement Agreement"). The terms of the July 7 Settlement Agreement required Hibernia to disclose additional information in the definitive proxy statement that was mailed to all Hibernia shareholders in advance of the shareholder vote on the proposed merger, including additional information regarding the negotiation of the merger, the financial interests of certain of Hibernia's officers and directors, and financial projections prepared by Hibernia's management for its financial advisors. The July 7 Settlement Agreement also required Capital One to reduce the merger's "termination fee" from $220 million to $200 million, thus encouraging third parties to consider making a higher offer for Hibernia stock. The July 7 Settlement Agreement included a general release of claims relating to the merger and the request for payment of legal fees to plaintiff's counsel.
At that time, the trial court entered a scheduling order granting preliminary certification of the class for settlement purposes and scheduling a hearing for November 30, 2005 to determine whether to certify the class, to assess the fairness of the proposed settlement, and to hear any objections.
On August 3, 2005, Hibernia's shareholders approved the merger, which was then scheduled to close on September 1, 2005. However, on August 29, 2005, just three days before the merger was scheduled to close, Hurricane Katrina made landfall in New Orleans. As a result of the storm, the merger did not close on *786 September 1, 2005. Instead, Hibernia and Capital One undertook to renegotiate certain terms of the merger to take into account the impact of the hurricane on Hibernia, the potential impact of a further extension of the merger closing date, and the increased risk that Capital One would be assuming by completing the merger.
On September 6, 2005, Hibernia and Capital One entered into Amendment No. 1 of the Agreement and Plan of Merger. The amendment provided that Capital One would acquire Hibernia's outstanding shares in exchange for consideration valued at approximately $30.49 per share at the time of the announcement of the amended merger agreement. The amended merger agreement also provided that the effects on Hibernia's business of Hurricane Katrina or any subsequent hurricanes or storms would not be grounds for either party to delay or avoid closing the transaction.
On October 1, 2005, a revised proxy statement was mailed to Hibernia shareholders explaining the terms of the amended merger agreement and scheduling a second shareholder vote for November 14, 2005.
In early November 2005, the trial court adjourned the settlement hearing originally scheduled for November 30, 2005 to January 17, 2006, thereby allowing plaintiffs to conduct additional discovery to confirm the fairness of the July 7 Settlement Agreement in light of the renegotiated terms of the Merger. On November 9, 2005, on a Form 10-Q filed with the Securities and Exchange Commission, defendants notified Hibernia shareholders that the settlement hearing had been rescheduled and would take place on January 17, 2006. On November 14, 2005, the Hibernia shareholders again voted to approve the merger.
On December 12, 2005, the parties entered into an Amended Stipulation and Agreement of Compromise, Settlement and Release (the "Amended Settlement"), confirming and restating the terms of the July 7 Settlement Agreement in light of the renegotiated terms of the merger. On December 13, 2005, the trial court entered a revised scheduling order that confirmed that the hearing to determine whether to certify the class, to assess the fairness of the settlement, and to hear any objections would be held on January 17, 2006.
On December 30, 2005, appellants, William C. Gambel, Carol C. Gambel and Gary J. Gambel, William J. Curry, Jr., Joy Nalty Hodges, Charles L. Gambel, Jr., individually, and as Trustee of the Testamentary Trust of Lorraine Nalty Gambel, and Frank M. Nalty (hereinafter the "Objectors") filed objections to the certification of the class and approval of the Amended Settlement. On January 5, 2006, the Objectors served defendants with a subpoena duces tecum demanding information regarding access to safe-deposit boxes at certain Hibernia branch locations. On January 13, 2006, defendants moved to quash the subpoena and/or issue a protective order. The trial court issued a Rule to Show Cause requiring Objectors to explain at the settlement hearing why defendants' motion should not be granted. At the settlement hearing, the Objectors agreed that their concerns underlying the subpoena were resolved by an agreement by the parties not to release potential claims of Hibernia shareholders demonstrably affected by Hurricane Katrina challenging the process for electing to receive cash or stock in the merger.
On January 17, 2006, the trial court held a full-day settlement hearing. Thereafter, on January 25, 2006, the trial court certified the class and approved the Amended Settlement. Specifically, in its final order *787 and judgment, the trial court determined that the "form and manner of the Notice" was "the best notice practicable under the circumstances"; approved the Amended Settlement as "reasonable and adequate and in the best interests of the Class"; approved the release of defendants and Capital One while specifically carving out "the right of any member of the Class demonstrably affected by Hurricane Katrina and Hurricane Rita to challenge the process for electing to receive cash or stock in the Merger"; and awarded unopposed attorney's fees and expenses to Etter's counsel.
On appeal, three of the Objectors, Gary J. Gambel, Carol C. Gambel, and William C. Gambel filed an appellate brief ("the G. Gambel brief") raising the following specifications of error:
The trial court erred when it approved a mandatory, non-opt-out settlement class which forced all class members to waive damage claims, present and future known and unknown, for the payment of no monetary compensation. The court erred in approving the settlement despite the fact that no evidence was presented at the fairness hearing that any of the requisites of class action articles of the Louisiana Code of Civil Procedure had been met. The court also erred in finding that certification of a non-opt-out class was proper. Further, the court erred in approving the form of notice which was clearly calculated not to reach large numbers of putative class members. Finally, the court erred in approving the payment of $850,000.00 in attorney's fees when the members of the class received no money.
The remaining Objectors, William J. Curry, Jr., Joy Nalty Hodges, Charles L. Gambel, Jr., individually, and as Trustee of the Testamentary Trust of Lorraine Nalty Gambel, and Frank M. Nalty filed an appellate brief ("the W. Curry brief") raising the following specifications of error: (1) the trial court erred in denying appellants' Motion for Leave to depose Etter and his counsel; (2) the trial court erred in denying appellants the right and opportunity to take written discovery before the hearing; (3) the trial court erred in entering judgment without a suitable record; (4) the trial court erred in certifying a no-opt-out class; (5) the trial court erred in approving the fairness of a "No Payment" settlement; (6) the trial court erred in approving the release of claims of Hibernia shareholders displaced by Hurricane Katrina, or shareholders otherwise adversely affected thereby, because they were unable to access their certificates and tender them in the exchange, and no suitable mechanism was put in place to enable them to obtain and tender replacement certificates; (7) the trial court erred in approving the release of claims respecting the adequacy and the sufficiency of disclosures, particularly in that Hibernia failed to disclose in the proxy solicitation that Etter had agreed to secure the release of all such disclosure-based claims in the "interest of directors" and that it was relying on Etter's promise; (8) the trial court erred in approving the release of claims of shareholders of the putative class from March 4 to November 14 when Capital One had not yet published its fourth quarter results or its year-end financial; (9) the trial court erred in approving the release of claims.
Before addressing the merits of the appeal, we note that although the W. Curry brief lists nine assignments of error; it fails to brief some of these assignments. Assigned errors that are neither briefed nor argued are considered abandoned on appeal. Uniform Rules, Courts of Appeal, Rule 2-12.4. Accordingly, this opinion will *788 address only those assignments that have been properly briefed by the Objectors.
STANDARD OF REVIEW
The standard of review for certification of class actions is bifurcated. The factual findings are reviewed under the manifest error/clearly wrong standard; the trial court's discretionary judgment on whether to certify the class or not is reviewed by the abuse of discretion standard. Boudreaux v. State, Dep't of Transp. and Dev., 96-0137, p. 5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 119. Accordingly, the standard of review in the case sub judice is whether the trial court abused its discretion in certifying the plaintiff's claims as a class action, and whether the trial court was manifestly erroneous in its factual finding that the evidence submitted was sufficient to satisfy the requisite elements of adequacy of representation, commonality, and numerosity, and an ascertainable or objectively definable class for class certification.
The bifurcated test for the appellate review of factual findings is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). An appellate court may not set aside a trial court's factual finding unless, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
Issue One: Whether the trial court abused its discretion by certifying a non-opt-out class under Article 591 of the Louisiana Code of Civil Procedure.
The first issue we will address is whether the certification of a non-opt out class action in this matter was proper. Objectors argue on appeal that the record below was inadequate to support the trial court's decision to certify the class. We find no merit to this argument.
The purpose and intent of the class action is to "adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situated." Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544. Louisiana Code of Civil Procedure Articles 591-597 govern the class action procedure. La.C.C.P. article 591 A provides the general rule for certification of a class. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
(4) The representative parties will fairly and adequately protect the interests of the class; and
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
In addition, La. C.C.P. art. 591 provides in pertinent part:
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

*789 (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
Further, it is well-settled that a "trial court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at the certification hearing." Billieson v. City of New Orleans, 729 So.2d 146, 154 (La.App. 4 Cir. 3/3/99). At the hearing on the motion to certify the class, plaintiff states, in pertinent part:
Mr. Rudy[1]:
. . . As to that first issue, class certification, I'm asking at this time . . . that you certify this class under Article 591. The representative plaintiff, Mr. Etter, had 6,500 shares of Hibernia stock during the relevant class period. There is nothing about his share ownership that is antagonistic to any other members of the class.
And your Honor, I think he has served as an adequate class representative. In my brief I went through the various factors: numerosity, commonality, typicality, adequacy of representation, as well as the objectiveness of the class definition.
. . . I'm also asking that the Court find that each of those criteria are satisfied in this litigation. I'm also asking that under 591(B)(1) and (B)(2), that class be certified as a non-opt-out class. These sections apply in litigation which *790 seeks and achieves substantially injunctive or declaratory relief which was the primary objective of this litigation.
Following Plaintiff's request to have the class certified, the court asked the Objectors to address why the class should not be certified. However, Objectors merely argued that the case sought damage relief and that the settlement was unfair rather than giving reasons why the case should not be certified.
In reviewing the verified petition, the briefs and the testimony at the certification hearing, we find that there was sufficient evidence for the trial court to certify this class. Specifically, as of February 25, 2005, there were at least 155 million shares of Hibernia common stock outstanding held by approximately 13, 779 record holders scattered throughout the United States, thus satisfying the numerosity requirement. Second, the principal issue in the class action petition is that Hibernia directors breached their fiduciary duties to the class by agreeing to the merger. The resolution of whether the directors breached their fiduciary duties will affect all or a significant number of the class members, thus satisfying the commonality requirement. Third, the representative plaintiff was confronted with the same injury as other class members, flowing from the same transaction, the merger, thus satisfying the typicality requirement. Fourth, plaintiff owned 6,500 shares of Hibernia stock during the class period, thus satisfying the adequacy of representation requirement. Fifth, the class was clearly and objectively defined as "all holders of Hibernia stock . . . from March 4, 2005 through November 14, 2005," thus satisfying the objective definition requirement. Accordingly, we find no manifest error in the trial court's factual findings that the requirements of La. C.C.P. art. 591(A) for certifying the class were met.
In addressing whether the certification of a non-opt-out class was proper, we will now address whether the action meets at least one of the three types of action under C.C.P. art. 591(B). In the proceedings below, plaintiff sought certification under both C.C.P. art. 591(B)(1) and (B)(2)[2]. As stated above, under C.C.P. art. 591 B(1), a class certification is proper where the prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.
Under C.C.P. art. 591(B)(2), class certification is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."
In this case, defendants owed the same duties to all class members. We find that prosecution of separate actions concerning members of this class would, as a practical matter, render inconsistent requirements *791 for Hibernia and its board with respect to the merger. Further, we note that to require opt-outs in this situation would only invite the inconsistent determinations that La. C.C.P. art. 591 B(1) and (2) are designed to avoid. Accordingly, we agree with Defendants that the trial court did not abuse its discretion by certifying this class under La. C.C.P. art. 591 B(1). Because we find the requirement of La. C.C.P. art. 591 B(1) satisfied, we will not address La. C.C.P. art. 591 B(2).
Issue Two: Whether notice satisfied the requirements of art. 594 of the Louisiana Code of Civil Procedure.
Even though Objectors received notice, they contend that the notice program approved by the trial court was inadequate and did not satisfy the Louisiana class action codal articles. We find no merit in this assignment of error.
Notice of class action settlements in Louisiana are governed by La. C.C.P. art. 594 A(2) which states that "[n]otice shall be given in such manner as the court directs." In this case, a Scheduling Order was signed on December 13, 2005, ordering the parties to mail the Notice to record holders of Hibernia shares during the class period no less than 30 days prior to the January 17, 2006 settlement hearing. Specifically, the Scheduling Order stated as follows:
No later than thirty (30) days prior to the Settlement Hearing, Hibernia or its successor(s) in interest shall cause the Notice to be mailed to record owners of stock of Hibernia who are members of the Class as shown on the stock records maintained by or on behalf of Hibernia, by first class mail, postage prepaid. Furthermore, Hibernia or its successor(s) in interest shall use reasonable efforts to give notice to beneficial owners of Hibernia stock (i) by mailing, at the expense of the Company or its successor(s) in interest, additional copies of the Notice to any record holder requesting the Notice for the purpose of distribution to any beneficial owners of Hibernia common stock who are entitled to notice, or (ii) at the request of such record holder, by mailing the Notice directly to such beneficial owners at the addresses provided by such record holder.
In accordance with the Scheduling Order, the defendants mailed the Notice to the class on December 14-16, 2005, more than 30 days prior to the scheduled settlement hearing. It is worth noting that the Objectors have not identified a single shareholder who sought to extend the time for objecting or was in any way deprived of his or her right to object to the Amended Settlement terms.
Following the January 17, 2006 hearing, the trial court, in its final order and judgment found that Notice was "the best notice practicable under the circumstances" and "fully complied with each of the requirements of Article 591 of the Louisiana Code of Civil Procedure. . . ." After reviewing the record, we too find that the notice program fully satisfied the requirements of the Louisiana class action codal articles and due process.
Issue Three: Whether the trial court erred in the release of claims.
On appeal, Objectors argue that the Amended Settlement provides "a release and extinguishes claims of Hibernia shareholders displaced by Hurricane Katrina, or shareholders otherwise adversely affected thereby, because they were unable to access their certificates and tender replacement certificates in the exchange. We find no merit in this assignment of error. As already noted, the trial court's Final Order and Settlement expressly states that "the claims to be released shall not include . . . the right of any member of *792 the Class demonstrably affected by Hurricane Katrina and Hurricane Rita to challenge the process for electing to receive cash or stock in the Merger." Further, we find that Objectors have offered no factual or legal justification for this Court to find that the trial court abused its discretion by approving the Settlement as fair, reasonable, and adequate and in the best interest of the class. Accordingly, we find that the Settlement, and the release attendant thereto, was entirely proper.
Issue Four: Whether the trial court abused its discretion in awarding attorneys' fees.
On appeal, Objectors argue for the first time, that the attorneys' fees awarded by the trial court were unreasonable. A review of the testimony is necessary in determining whether the fees were "fair and reasonable."
Mr. Rudy:
[T]he third thing that our brief has asked the Court approve today is the plaintiff's counsel request of $850,000. . . . [I]t is . . . undisputed that the fee will be paid by the company, that none of the money going to plaintiff's counsel is coming out of the pockets of shareholders. The deal was structured with shareholders receiving a certain amount of consideration. And that amount of consideration is in no way reduced by the attorney's fee award.
Second, this fee request is not opposed by defendants. This is an unopposed application for attorney's fee.
* * *
Now, you can imagine I will also represent that I believe defense counsel has asked to represent that the negotiation about the termination fee, about the attorney's fee took place after all the terms were in place. So there was no possibility of the attorney's fee affecting the relief that was given to shareholders. We negotiated the proxy enhancements and disclosures with the proxy statement. And only after all the substantive terms were reached and agreed to did we negotiate the attorney's fee. And that negotiation was as hard fought as the negotiation over the terms of the settlement. We were throwing out larger numbers than $850,000. They were giving back smaller numbers.
The Court:
Mr. Rosenberg doesn't give up money.
Mr. Rudy:
Mr. Rosenberg and his Client were not inclined, and its perhaps obvious, but defendants are not in the business of giving away money that they don't think they have to give.
And the negotiations centered on the premise that the benefits that were achieved in this litigation justified a large attorney's fee award in light of the benefit, amount of effort that it took to secure that benefit, the amount it took after the benefit was agreed to in the confirmatory discovery process, the risk of contingency and litigation.
* * *
I can represent to the Court that this was a hard-fought negotiation done at arm's length after all the terms of negotiation. The benefits achievedthe effort that it took to achieve that benefit is the fact that this money is not being paid by shareholders in any form. The fact that defendants are consenting to the fee award, not opposing the fee awards, all of those facts, I would ask the Court to approve the fee of $850,000 in its entirety for the efforts in this litigation efforts that have certainly taken its turns related to Katrina and *793 otherwise, and we have diligently prosecuted claims for nine months with that back drop.
* * *
Mr. William Gambel:
Your honor, while we oppose certification and while we opposeobject to the fairness, we take no position on this issue. (emphasis added)
Because the negotiation of the attorney's fees took place entirely at arm's length and only after an agreement had been reached on the substantive terms of the Amended Settlement, and because neither the Defendants nor the Objectors opposed the requested fee, we conclude that the fees were "fair and reasonable" and within the trial court's discretion.
In conclusion, we hereby affirm the judgment of the trial court, which certified this class and approved the Amended Settlement.
AFFIRMED.
MURRAY, J., concurs and assigns reasons.
MURRAY, J., concurring.
In the instant case, the Objectors had standing as class members to object to the terms of the proposed settlement. In their initial notice to the court, the Objectors stated that they opposed the settlement on the grounds that the notice to the parties was inadequate, the terms of the settlement were not beneficial to the class members, and the amount of attorney fees was disproportionate in comparison with the benefits to the class. Although not requesting to opt out of the class, the Objectors additionally argued that the settlement should not be approved because the shareholders had not been given an opportunity to opt out. In my view, the Objectors cannot have it both ways. They had the choice of either requesting to opt out of the class (thereby objecting to the proposed certification as a non-opt out class) or of using their standing as members of the class to oppose the terms of the settlement. The position of the Objectors herein is inherently inconsistent.
Moreover, the trial court did not err by certifying a non-opt out class in the instant case. The class action petition clearly states: "This is a shareholder class action which seeks injunctive relief with regard to a merger between Hibernia Corporation and Capital One Financial Corporation . . ." (Emphasis added). Although the Objectors opposed the settlement because it provided for the release of all claims, including damage claims, by the class members, they never asserted any damage claims, nor could they name any potential damage claims when questioned by the trial court about same at the hearing (other than those related to Hurricane Katrina, which are expressly excepted from the settlement). In the absence of some showing that damage claims exist, I cannot say that the trial court abused its discretion by certifying the class or by approving the settlement.
For these reasons, I respectfully concur in the result reached by the majority.
NOTES
[1] Counsel representing Plaintiff Gerald Etter.
[2] The amended portions of article 591 more closely track the language of Federal Rule 23(b). The Louisiana Supreme Court has encouraged lower courts to follow Federal Rule 23(b) as a guide when determining if class certification is appropriate. See Banks v. New York Life Ins., Co., 98-0551 (La.12/7/98); 722 So.2d 990, 994.