EDWIN A. LOMBARD, Judge.
 

 | ,In this Hurricane Katrina-related insurance action, Defendant, Lafayette Insurance Company (“Lafayette”), appeals from the judgment of the trial court certifying the matter as a class action. For the reasons fully set forth below, we find that the elements necessary for class certification are present, and affirm the judgment of the trial court certifying the class, with directions.
 

 Relevant Facts
 

 On August 29, 2009, Hurricane Katrina made landfall in the Gulf Coast region, bringing with it 135 mile per hour winds that caused substantial property damage to homes throughout southeast Louisiana. The named plaintiff and plaintiff class members are residents of Orleans Parish and/or seven of its surrounding parishes whose property, which was insured by Lafayette, sustained wind damage as a result of Hurricane Katrina. Plaintiffs allege that they made timely claims under their respective Lafayette policies but that their claims were not paid in accordance with the policies and Louisiana law. Plaintiffs specifically allege that Lafayette engaged in an intentional systematic underpayment of claims through the use of pre-Katrina cost numbers; refusal to pay overhead, profit and |2proper sales tax; failure to timely pay; and blanket denials of additional living expenses and civil authority allowance due to displacement.
 
 [1]
 

 This action was initially brought by Charles Dupree, as class representative, against Lafayette seeking to represent all citizens of Louisiana who were insured by Lafayette, who suffered windstorm damages to their property and whose claims were totally or partially denied or misad-justed by Lafayette and its adjusters. During the course of the litigation, Mr. Dupree died and his daughter was substituted as Plaintiff. Additional class representatives were later added.
 

 Plaintiffs filed a motion to certify this action as a class action, pursuant to Louisiana Code of Civil Procedure Article 592. A hearing on the class certification issue was heard on June 10, 11 and 14, 2008. The matter was submitted for decision af
 
 *489
 
 ter receipt of all post-trial memoranda and on August 13, 2008, the trial court rendered a judgment granting Plaintiffs’ motion for class certification, certifying a class that included commercial policies. Lafayette filed a Motion for New Trial or alternatively to limit the class to homeowner’s policies, which the trial court granted.
 

 Following post trial motions, the judgment was amended limiting the class to homeowner’s policies and defining the class as:
 

 All persons whose property is located in St. Bernard, Plaquemines, Orleans, St. Tammany, Jefferson, St. Charles, Tangipahoa and Terrebonne Parishes Louisiana and covered by a homeowner’s insurance policy issued by Lafayette Insurance Company, sustained wind damage in connection with Hurricane Katrina on or about the 29th of August 2005 and whose policy for benefits related to wind damage to their property has been denied in toto or partially misadjusted by Lafayette Insurance Company and/or its representatives by:
 

 1. By using repair estimates, whether derived by Xactimate or other | ¡¡means to use pre-Katrina pricing information to adjust claims that are lower than the higher post Katrina prices of goods and services.
 

 2. By excluding in the repair or replacement estimates for roofs damaged by failing to include the cost of overhead and/or profit where a General Contractor is to be used or circumstances require, the inclusion of overhead and profit.
 

 3. By fading to include the cost of permits and sales tax in repair estimates used to adjust claims.
 

 4. By failing to properly adjust additional living expense’s (sic) loss when the relocation or displacement resulting from windstorm required the insured to relocate and thereby incurred additional living expense.
 

 5. By failing to properly adjust civil authority claims to recognize that the coverage is available when the damage to adjacent property from wind results in the civil authority to prohibit entry or occupancy of the insured property, whether the insured property itself is damaged by wind or not.
 

 6. By failing to pay claims within the prescribed statutory period of 30 or 60 days after satisfactory proof of loss when such loss is arbitrary, capricious and without probable cause.
 

 It is from this judgment that Lafayette now appeals.
 

 Specifications of Error
 

 On appeal, Lafayette contends that the trial court abused its discretion and was manifestly erroneous in certifying this case as a class action, and it asserts six specifications of error in support of its position. Lafayette specifically argues that the trial court erred in:
 

 1. finding that plaintiffs’ general adjusting practices class action satisfies the requirements of commonality and predominance;
 

 2. finding that the class sought to be certified is a well defined and clearly ascertainable class;
 

 |43. finding plaintiff satisfied other requirements of La. G.C.P. art. 591(A) and 591(B)(1);
 

 4. certifying a class action on bad faith;
 

 5. allowing plaintiffs experts to testify where they could not satisfy the reliability requirements of Daubert;
 

 
 *490
 
 6. finding that the factual testimony at trial does supports a class action on the issues certified;
 

 7. failing to limit the class to St. Bernard Parish; and
 

 8. failing to grant Lafayette’s exceptions [of lis pendens and res judicata].
 
 Issues on Appeal
 

 The central issue in this appeal is whether the trial court properly granted the plaintiffs’ motions to certify the matter as a class action. Although Lafayette also includes, as a specification of error, the trial court’s judgment denying its Exceptions of Lis Pendens and Res Judicata, this court does not have the jurisdiction to consider the denial of these exceptions in this appeal. The May 9, 2008, judgment denying Lafayette’s exceptions was an interlocutory judgment that is not appeal-able at this juncture. And, while we do have the discretion to convert an appeal into an application for supervisory writs,
 
 [2]
 
 we decline to exercise this discretion since Lafayette’s notice of appeal was filed on October 14, 2008, well beyond the thirty-day delay provided for seeking supervisory writs. See, Rule 4-3, Uniform Rules of Court-Courts of Appeal, and La. C.C.P. art. 1914. Moreover, since the trial court has not yet ruled on Lafayette’s Exception of Res Judicata, any | ¡¡appeal on that issue is premature at this time.
 
 [3]
 
 Accordingly, this opinion will address only Lafayette’s specifications of error pertaining to the certification of the class.
 

 Law and Discussion
 

 Class Actions in General
 

 A class action is a nontraditional litigation procedure permitting representa-fives with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when a question of law or fact is of common or general interest to persons so numerous as to make it impracticable to bring them all before the court.
 
 Ford v. Murphy Oil U.S.A., Inc.,
 
 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544.
 

 In general, the fundamental objective of the class action procedural device is the achievement of economies of time, effort, and expense.
 
 Lewis v. Texaco Exploration and Production Co., Inc.,
 
 96-1458, p. 19 (La.App. 4 Cir. 7/30/97), 698 So.2d 1001, 1014. With respect to the parties, the purpose and intent of the class action is to adjudicate and obtain
 
 res judi-cata
 
 effect on all common issues applicable not only to the class representatives who bring the action, but also to all others who are similarly situated.
 
 Banks v. New York Life Ins. Co.,
 
 98-0551, p. 5 (La.12/7/98), 722 So.2d 990, 993 (citing
 
 Ford, supra,
 
 703 So.2d 542). A class action is a procedural device only and does not confer substantive rights.
 
 Andry v. Murphy Oil, U.S.A., Inc.,
 
 97-0793 — 97-800, p. 2 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1128-29. Moreover, a class certification hearing does not determine liability and is not the correct venue to decide the merits of the case or the defenses | ¡¡the defense may allege.
 
 Chalona v. Louisiana Citizens Property Ins. Corp.,
 
 08-0257, p. 10-11 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 503.
 

 The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis.
 
 Brooks v. Union Pacific Railroad Compa
 
 
 *491
 

 ny,
 
 08-2035, p. 10 (La.5/22/09), 13 So.3d 546, 554. The trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.
 
 Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport,
 
 309 So.2d 144, 152 (La.1975).
 

 Class Certification Procedure: La.Code Civ. Proc. art. 591
 

 In the State of Louisiana, the procedure for class certification is governed by Article 591 of the Louisiana Code of Civil Procedure. Article 591(A) provides that a civil action must first meet five prerequisites to qualify for class certification. Those prerequisites are as follows:
 

 (1) The class is so numerous that join-der of all members is impracticable.
 

 (2) There are questions of law and fact common to the class.
 

 (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
 

 (4) The representative parties will fairly and adequately protect the interest of the class.
 

 (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case.
 

 La.Code Civ. Proc. art. 591(A). These five prerequisites are commonly referred to as numerosity, commonality, typicality, adequacy, and identifiability.
 

 |7In addition to these five prerequisites, Subsection 591(B) lists three additional criteria, only one of which need be satisfied to certify a class. Under 591(B), a trial court must find that:
 

 (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
 

 (a) Inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class, or
 

 (b) Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or would substantially impair/impede their ability to protect those interests, or
 

 (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final in-junctive relief or corresponding declaratory relief with respect to the class as a whole, or
 

 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superi- or to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
 

 (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions,
 

 (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
 

 (c) The desirability or undesirability of concentrating the litigation in the particular forum,
 

 (d) The difficulties likely to be encountered in the management of a class action,
 

 
 *492
 
 (e) The practical ability of individual class members to pursue their claims without class certification,
 

 (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation [.]
 

 La.Code Civ. Proc. art. 591.
 

 |
 
 Standard of Review
 

 The standard of review for class action certifications is bifurcated. The factual findings are reviewed under the manifest error/clearly wrong standard, while the trial court’s judgment on whether or not to certify the class is reviewed by the abuse of discretion standard.
 
 Etter v. Hibernia Corporation,
 
 06-646 (La.App. 4 Cir. 2/14/07), 952 So.2d 782. A trial court has wide discretion in deciding whether or not to certify a class.
 
 Chiarella v. Sprint Spectrum LP,
 
 04-1433, p. 16 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 118. Any error to be made in deciding class action issues should be in favor of and not against maintenance of the class action, because a class certification order is subject to modification if later developments during the course of trial so require.
 
 McCastle v. Rollins Environmental Services of Louisiana, Inc.,
 
 456 So.2d 612, 620 (La.1984).
 

 When reviewing the trial court’s ruling regarding class certification, we do not consider whether plaintiffs’ claims state a cause of action or have substantive merit, or whether plaintiffs will ultimately prevail on the merits.
 
 Munsey v. Cox Communication of New Orleans, Inc.,
 
 01-0548, p. 5 (La.App. 4 Cir. 3/20/02), 814 So.2d 633, 636. Rather, our task is to examine Plaintiffs’ legal claims and to determine only whether a class action is the appropriate procedural device in light of established Louisiana criteria.
 
 Id.
 

 In the instant case, the trial court found that Plaintiffs’ claims meet all of the criteria set forth in Louisiana Code of Civil Procedure article 591(A), namely numerosity, commonality, typicality, adequacy of representation, and an objectively definable class. The trial court also found that the elements of predominance and superiority set forth in Louisiana Code of Civil Procedure article 591(B)(3) have been satisfied.
 

 |3We now turn to an examination of the pleadings and evidence submitted with the motion to certify the class, in light of the relevant law regarding class certification, to determine whether the motion was properly granted.
 

 La.Code Civ. Proc. art. 591(A)
 

 Numerosity
 

 The first prerequisite to class certification is that the class must be so numerous that joinder of all members is impracticable. La.Code Civ. Proc art. 591(A)(1). The determination of numerosity is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims.
 
 Chalona,
 
 08-0257, p. 6, 3 So.3d at 500-01. The numerosity requirement for class certification is not established by mere allegations of a large number of potential claimants.
 
 Johnson v. Orleans Parish School Bd.,
 
 00-0825 — 00-0828, p. 7 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 741. Rather, the burden is on the plaintiff/movant to make a prima facie showing that a definable group of aggrieved persons exists and that the class is so numerous that joinder is impractical. Id. at 7-8. However, the key is
 
 impracticality,
 
 and not
 
 impossibility
 
 of joinder.
 
 *493
 

 Gudo v. Admin, of Tulane Educ. Fund,
 
 06-1515, p. 7 (La.App. 4 Cir. 9/5/07), 966 So.2d 1069,1075. No set number has been established that automatically makes join-der impractical, rather, the determination is based on the facts and circumstances of each case.
 
 Chiarella,
 
 04-1433, p. 18, 921 So.2d at 119. We have previously held, for example, that a presumption arises that joinder is impractical, for purposes of class certification, if more than 40 class members exist.
 
 Vela v. Plaquemines Parish Government,
 
 658 So.2d 46, 48 (La.App. 4 Cir. 6/29/95). We have also held that the certification of a class containing between 150 and 600 members was sufficiently numerous to withstand manifest error review.
 
 Id.
 

 Here, the trial court found that the class, as defined, might include as many as seven thousand plaintiffs who were Lafayette policyholders that made claims under their homeowner’s insurance policy in the eight parish area. The trial court opined that that many separate suits on behalf of Lafayette policyholders would unduly burden the courts. We cannot say that this finding was manifestly erroneous.
 

 Commonality
 

 The second prerequisite to class certification is that there are questions of law or fact common to the class. La.Code Civ. Proc Art. 591(A)(2). The test of commonality is not a demanding one.
 
 Rapp v. Iberia Parish School Bd.,
 
 05-833, p. 9 (La.App. 3 Cir. 3/1/06), 926 So.2d 30, 37. It requires only that there be at least one issue of law or fact, the resolution of which will affect all or a significant number of putative class members.
 
 Id.
 
 (citing
 
 Duhe v. Texaco, Inc.,
 
 99-2002, p. 12 (La.App. 3 Cir. (2/7/01), 779 So.2d 1070,1078)).
 

 Lafayette argues that because the proposed class involves eight parishes, all having different amounts of flooding and wind damage, and all having different evacuation orders and return orders, the commonality requirement cannot be not met in this case. Lafayette claims that there are a “myriad of individual complaints that will ultimately require plaintiff-by-plaintiff identification of liability issues.” Plaintiffs, on the other hand, argue that there are several basic, common threads that run through the class: (1) all class members are Lafayette insureds who owned property in Southeast Louisiana that was damaged by severe winds related to Hurricane Katrina; (2) all class members are insured under homeowner’s policies; |nand (3) all members of the class were victims of one or more of the specific list of improper adjusting practices which were set out in detail by the trial court. Hence, according to the plaintiffs, the common questions of fact in this case involve the failure of Lafayette to properly pay amounts owed under its homeowner’s policies and under Louisiana law by engaging in bad faith adjusting practices.
 

 While acknowledging individual differences in the quantum of damages among plaintiffs, the trial court found that the plaintiffs established several common issues, the resolution of which will affect the class members. Because there is evidence to support such findings, we do not find the trial court’s findings on this issue to be manifestly erroneous.
 

 Typicality
 

 The third prerequisite to class certification is that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. La.Code Civ. Proc art. 591(A)(3). The requirement of typicality is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory.
 
 Gudo,
 
 
 *494
 
 06-1515, p. 12, 966 So.2d at 1078. Moreover, plaintiffs seeking certification of a class action are not required to produce two, or even one, of every kind of claim or of every person included in the class, in order to satisfy the prerequisite of typicality for class certification.
 
 Davis v. Jazz Casino Co., L.L.C.,
 
 03-0005, p. 10 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 889.
 

 Plaintiffs argue that all of their claims arise from the same event (Hurricane Katrina), out of the same conduct (Lafayette’s course of conduct in employing bad faith adjusting practices, which resulted in class members receiving less than the |12sums duly owed under their respective policies), and resulted in the same type of damages to the members of the class. Moreover, all plaintiffs’ claims seek statutory penalties under Louisiana law for Lafayette’s violation of policy terms and Louisiana law. Plaintiffs further allege that their claims are based on the same legal theory (that Lafayette breached its legal obligation owed under its policies of insurance and Louisiana law by engaging in the bad-faith adjusting practices which were identified by the trial court). The trial court obviously agreed, and opined that, because these issues were common to all of plaintiffs’ claims, the claims of the representative plaintiffs were also typical of the class as a whole. Because there is evidence to support such a finding, we cannot say that these findings were manifestly erroneous.
 

 Adequacy
 

 The fourth prerequisite to class certification is that the representative parties must fairly and adequately protect the interests of the class. La.Code Civ. Proc Art. 591(A)(4). Adequacy of representation for class certification requires that the claims of the proposed class representatives be a cross-section of, or typical of, the claims of all class members.
 
 And,ry,
 
 97-0793, p. 6, 710 So.2d at 1130. Class representatives can adequately represent absent class members, even though claims by a particular class representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is.
 
 Id.
 
 at 1131.
 

 All of the class representatives testified at the class certification hearing that they are Lafayette policyholders who are willing to serve as class representatives and are willing to work with class counsel to pursue this claim on behalf of all class members. The burden is on the Defendant, Lafayette, to demonstrate that the | ^representation will be inadequate.
 
 Jenkins v. Raymark Industries, Inc.,
 
 782 F.2d 468 (5th Cir.1986). From the evidence produced at the certification hearing, the trial court found that the class representatives will adequately represent the class in such a manner as to protect the interests of the putative class members. Lafayette has not shown that the trial court erred in finding that the requirement of adequacy was met in this case. Because there is evidence in the record to support the trial court’s finding of adequacy, we cannot say that finding is manifestly erroneous.
 

 Objective Definition of the Class
 

 The final prerequisite under 591(A) is that the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
 
 Chalona,
 
 08-0257, p. 9, 3 So.3d at 502. The purpose of the class definition requirement for class certification is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he or she is a member of the class.
 
 Id.
 
 The class need not be so clearly defined that every class member can be identified at the com-
 
 *495
 
 raencement of the action, as the trial court can modify the class as needed when discovery or the trial adds relevant facts to the record.
 
 Duhe,
 
 99-2002, p. 15, 779 So.2d at 1080.
 

 The trial court found that the class was “clearly definable.” The class definition includes Lafayette homeowner’s policyholders in the eight designated Southeast Louisiana parishes whose insurance claims related to Hurricane Katrina were not properly paid by Lafayette under their insurance policies because of specific adjusting practices in which Lafayette engaged, including using repair estimates that employed pre-Katrina pricing, by excluding cost of overhead and | ^contractor profit in the repair or replacement of roofs, by failing to include cost of permits and sales tax in repair estimates, by failing to adjust additional living expenses and civil authority claims, by arbitrarily and capriciously failing to pay claims within the prescribed statutory 30 or 60 day period after satisfactory proof of loss.
 

 In most respects, the proposed class is sufficiently defined in order to give potential class members enough information to determine whether they are included within the class and to enable potential class members whether to opt out of the class. And, Lafayette can easily verify members of the class by a review of their own business records to ascertain in which claims it utilized pre-Katrina pricing, failed to pay civil authority, additional living expenses, overhead and profit, permits, or proper sales tax, and/or failed to timely pay amounts due under the relevant policies.
 

 The one problem we find with the trial court’s class definition is contained in the definition’s last paragraph. We believe that the language “when such is arbitrary, capricious and without probable cause” should be stricken from the class definition. Care should be taken to define the class in objective terms capable of membership ascertainment when appropriate, without regard to the merits of the case. The determination of whether an insurer’s failure to pay was arbitrary and capricious must be made at trial and goes to the merits of each individual claim. Moreover, the inclusion of this language creates ambiguity on the part of a potential class member, who may not be aware of whether Lafayette’s failure to make timely payment was arbitrary or capricious, or whether Lafayette had a justifiable reason for doing so under the circumstances. The phrase itself calls for a legal conclusion that potential class members may not have the legal knowledge |ir,to make. For these reasons, we direct the trial court to strike this language from the definition while leaving the remainder of the definition intact. “[B]ecause of a trial court’s authority to redefine the class before a decision on the merits of the common issues, appellate courts often allow certification despite a finding that the definition is inadequate for one reason or another.”
 
 Duhe v. Texaco, Inc.,
 
 99-2002, p. 12 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078. Thus, the trial court may address this inadequacy, in accordance with our directions, on remand.
 

 Based on the foregoing, we find the plaintiffs have fulfilled the statutory requirements of La.Code Civ. Proc. art. 591(A). We must now turn to the question of whether at least one of the requirements of article 591(B) has been met.
 

 La.Code Civ. Proc. AH. 591(B)
 

 The second level of analysis for determining whether to certify a class action is governed by La.Code Civ. Proc. art. 591(B). A court reaches this level of analysis only if it finds that all the requirements of article 591(A) have been satisfied. Only one of the requirements of Section
 

 
 *496
 
 (B) must be met. In this case, the trial court found that the plaintiffs satisfied 591(B)(3), which requires the court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods of adjudicating the controversy.
 

 La.Code Civ. Proc. Art. 591(B)(3)
 

 Predominance
 

 The Louisiana Supreme Court recently addressed the relationship between questions of liability and the propriety of class certification in
 
 Brooks v. Union Pacific Railroad Company,
 
 08-2035 (La.5/22/09), 13 So.3d 546. In
 
 Brooks,
 
 the Court held that “[a]n inquiry into predominance tests ‘whether the proposed classes |1fiare sufficiently cohesive to warrant adjudication by representation.’ ”
 
 Id.,
 
 p. 9. The process prescribed by the Court in making this determination is to identify the substantive issues that will control the outcome, to assess which issues will predominate, and then to determine whether the issues are common to the class.
 
 Id.
 
 This process is ultimately meant to prevent the class from degenerating into a series of individual trials.
 
 Id.
 
 Thus, according to
 
 Brooks,
 
 in order to meet the common cause requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation.
 

 In the case at bar, Lafayette argues that the class certified by the trial court, on its face, leaves no doubt that individual issues will predominate over common ones. Lafayette argues that the first five issues certified by the trial court, (1) improper adjustment, (2) overhead and profit, (3) permits and taxes, (4) additional living expenses and (5) civil authority, are all general adjusting allegations that are dependent on the facts of each individual case. Defendant further argues that, unlike the classes recently certified by trial courts dealing with statutory penalties for the respective insurers’ failure to timely pay claims, here, plaintiffs offered no independent evidence of the failure of Lafayette to make payment within 30 or 60 days that was independent from the allegations of improper adjustment. Thus, according to Lafayette, there will be no class trial that decides any issue for the entire class and the determination of each of the issues certified will require an intensive review of the individual facts of each plaintiffs damage claim. Lafayette argues that due to the highly individualized nature of these inquiries, class certification is simply wrong as a matter of law. Finally, Lafayette argues that because the class certified involves eight parishes, all having different amounts of 117flooding and wind damage, and all having different evacuation and return orders, individual questions pertaining to each class member overwhelm any common issues, plaintiffs’ claims are inappropriate for class treatment.
 

 The plaintiffs, on the other hand, assert that pivotal and predominant issue in this case is the systematic and knowing violation by Lafayette of the class members’ legal rights under the Lafayette homeowner’s policies and Louisiana law. All of the class members’ claims are founded on an assertion of Lafayette’s intentional and systematic failure to properly adjust their wind damage claims. Plaintiffs further argue that this pivotal issue is common to all class members. According to the plaintiffs, the intentional acts of one defendant created one set of circumstances which injured all of the class members and that this pivotal issue is common to all plaintiffs and predominates over any individual issues which may be presented by the circumstances surrounding the claim of an
 
 *497
 
 individual class member. The trial court apparently agreed. Because there is support for these arguments in the record, we find that the predominance requirement has been satisfied in this case.
 

 Superiority
 

 The trial court found that, in this case, proceeding as a class action “is superior to the filing of individual actions in many respects.” Although the trial court acknowledged that individual differences may occur in the calculation of damages or cause of loss, it ultimately opined that the class action is more appropriate here considering the ability of the trial court to establish subclasses and the continuing oversight of the court to modify the class definition.
 

 When a common character of rights exists, a class action is superior to other available adjudicatory methods in effectuating substantive law, and promoting | judicial efficiency and individual fairness.
 
 Chalona,
 
 08-0257, p. 12, 3 So.3d at 503-04. If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals.
 
 Id.; Chiarella,
 
 04-1433, p. 20, 921 So.2d at 120.
 

 Uniformity in this case can best be obtained by employing the class action procedure. As plaintiffs correctly argue, the prosecution of as many as 7,000 separate lawsuits would pose a significant possibility of inconsistent adjudications on these common issues and could result in members of the class being negatively impacted by a decision from another court and impair their ability to pursue their claim. Thus, in this case, the class action procedure is a superior method under the circumstances to ensure individual fairness and to promote judicial efficiency.
 

 The trial court exercised its discretion in determining whether class certification was superior to other available methods for the fair and efficient adjudication of the controversy. The trial court performed the rigorous analysis required by
 
 Brooks
 
 in determining whether this proposed class action meets the requirements imposed by law. The trial court actively inquired into every aspect of the case and explored the facts and evidence beyond the pleadings.
 

 Considering the facts introduced at the class certification hearing and in the record before us, we find that the trial court did not err in finding that a class action is the superior procedural device for adjudicating this matter. Lafayette’s argument that the factual testimony at trial does not support a class action on the issues certified is without merit.
 

 Moreover, Lafayette’s argument that the trial court committed legal error in allowing plaintiffs’ experts to testify where they could not satisfy the reliability requirements of Daubert is equally meritless. The Louisiana Supreme Court has 113adopted the test set out in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, for admitting expert testimony under Louisiana code of Evidence Article 702, which pertains to the admission of scientific, technical, or other specialized knowledge. In this case, plaintiffs’ claims do not involve novel scientific evidence as contemplated by
 
 Daubert.
 
 Rather, plaintiffs’ allegations are based on well established insurance adjusting procedures that were ignored or improperly applied by Lafayette in adjusting plaintiffs’ property insurance claims.
 

 Moreover, Mr. Baldwin, an insurance adjuster, and Mr. Drennen, a general contractor, were competent to testify regarding the matters they addressed. The trial court clearly had the authority to hear
 
 *498
 
 testimony regarding the facts of the case and to determine the weight to be assigned to the opinions of plaintiffs’ experts. Accordingly, we find no abuse of the trial court’s decision to allow Mr. Baldwin and Mr. Drennen to testify at the class certification hearing.
 

 Finally, Lafayette argues that should this Court determine that class action is the best vehicle for litigating the plaintiffs’ claims against Lafayette, the class should be limited to Lafayette policyholders whose property is located in St. Bernard Parish. Lafayette urges that the trial court erred in failing to limit the class to St. Bernard Parish because no evidence was offered at the certification hearing for any parish other than St. Bernard. Lafayette also argues that the civil authority order in St. Bernard Parish was different from those in neighboring parishes and the damage caused by the hurricane was pervasive throughout St. Bernard Parish and was more consistent than in the neighboring parishes.
 

 In response, plaintiffs argue that although the class representatives that testified at the hearing are all residents of St. Bernard Parish, their claims are typical of everyone in the class in the eight Southeast Louisiana parishes covered |2nby this suit. Moreover, plaintiffs argue that neither hurricane Katrina’s destructive force nor Lafayette’s allegedly improper adjusting practices were limited to St. Bernard Parish.
 

 We find that the trial court did not abuse its discretion in certifying a class containing Lafayette policyholders whose property is located in Orleans and its surrounding seven parishes whose property was damaged by wind and whose claim was improperly adjusted by Lafayette. We agree with plaintiffs that the claims of the class representatives are typical of everyone in the class, regardless of where their property is located. Of course there may be differences in the amount of damages owed to an individual homeowner based on the varying sales taxes and civil authority allowances for the homeowner’s particular parish, but in
 
 Brooks,
 
 the Louisiana Supreme Court noted that it is not necessary that the amount or extent of damages be common to all class members; rather, “the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.”
 
 Id.,
 
 citing,
 
 Bartlett v. Browning-Ferris Industries Chemical Services, Inc.,
 
 99-0494 (La.11/12/99), 759 So.2d 755, 756. Moreover, this Court recently affirmed the district court’s certification of a class made up of residents from all over the state of Louisiana in
 
 Chalona v. Louisiana citizens Property Insurance Corporation,
 
 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494. Thus, we do not find any reason that the class should be limited to only those in St. Bernard Parish.
 

 Conclusion
 

 The trial court found that Plaintiff-Ap-pellees satisfied all of the requirements of 591(A) as well as the requirements of 591(B)(3). A trial court has vast [⅞1 discretion regarding class certification.
 
 Billieson v. City of New Orleans,
 
 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53. We find no manifest error in the trial court’s findings and no abuse of discretion in the trial court’s determination that this matter meets all of the requirements of La.Code Civ. Proc. art. 591 for certification as a class action. Moreover, the general rule is that if there is to be an error made, it should be in favor of, and not against, the maintenance of the class action,
 
 Dumas v. Angus Chemical Co.,
 
 25632-CA, p. 12-13 (La.App. 2 Cir.
 
 *499
 
 3/30/94), 635 So.2d 446, 453. The trial court always possesses the authority to revisit or modify its decision regarding class certification if later developments during the course of trial so require. Accordingly, we affirm the judgment of the trial court granting plaintiffs’ motion for class certification, remand the case for further proceedings, and direct the trial court to address the inadequacies in its class definition in accordance with this court’s recommendation.
 

 AFFIRMED AND REMANDED WITH DIRECTIONS.
 

 [1]
 

 . Under Coverage D of the Lafayette homeowner's policy, Civil Authority covers living expenses incurred by the insured when a civil authority prohibits the use of a residence because of damage to neighboring property caused by an insured peril — in this case, wind.
 

 [2]
 

 .
 
 Stelluto v. Stelluto,
 
 05-0074, p. 7 (La.6/29/05), 914 So.2d 34, 39.
 

 [3]
 

 . In its May 9, 2008, Judgment on Exceptions, the trial court noted that "Defendant has deferred its argument on the Peremptory Exception of Res Judicata on these same issues to a later date, following a decision on the class certification motion.”